DIEBOLD SAFE & LOCK COMPANY, Appellant, v. T. H. B. DUNNEGAN et al., Respondents.

Kansas City Court of Appeals, February 1, 1909.

1. TRIAL AND APPELLATE PRACTICE: Replevin: Ownership and Possession: Evidence: Finding. In an action of replevin where on submission of the evidence the trial court finds that certain defendants who disclaimed ownership were not in possession of the property at the times of the issuance and service of the writ and also found the possession in another defendant, the appellate court is precluded from going into that question.

2. SALES: Agency: Contract: Collection: Sight Draft. Where a contract appointing an agent made him liable for the price of the goods he sold he was authorized to collect payment for them upon delivery to the purchaser; and the fact that a sight draft in favor of the principal and drawn on the vendee accompanied the bill of lading will not effect the authority to collect.

Safe & Lock Co. v. Dunnegan.

3. ———: ———: ———: ———: Construction. An agree-ment of agency provided that contracts for special work shall be taken in the name of the principal and the contract forwarded to him with the right to make collections for the same if he thinks best, is construed to authorize the agent to collect unless the principal should think it best to make the collection himself.

Appeal from Polk Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*Harry T. West* and *Rechow & Pufahl* for appellant.

(1) Plaintiff, being the original owner of the vault doors, and having shipped them to its own order, with instructions to deliver on original bill of lading only, never parted with its title. Until the draft was paid and the bill of lading surrendered, plaintiff remained the owner. R. S. 1899, secs. 5054; Baker v. Fuller, 21 Pick, 318; Lester v. McDowell, 18 Pa. 91; Ward v. Taylor, 56 Ill. 494; Sohn v. Jervis, 101 Ind. 578; Libby v. Ingalls, 124 Mass. 503; McCormick v. Joseph, 77 Ala. 236; Seelingson v. Philbrick, 30 Fed. Rep. 601; Alderman v. Railroad, 115 Mass. 233; The Frances, 13 U. S., 9 Cranch. 183, 3 L. Ed. 698; Refining Co. v. Refining Co., 42 L. R. A. 353, 104 Ky. 559, 47 S. W. 602; Hopkins v. Cowan, 47 L. R. A. 124, 44 Atl. 1062; Bank v. Bangs, 102 Mass. 291; Hardy v. Munroe, 127 Mass. 64; Emery v. Bank, 25 Ohio St. 360, 18 Am. Rep. 299; Railroad v. Stern, 119 Pa. 29, 12 Atl. 756; Wolfe v. Railroad, 97 Mo. 480; Bergeman v. Railroad, 104 Mo. 77; Bank v. Jones, 4 N. Y. 497, 55 Am. Dec. 290; Bank v. Daniels, 47 N. Y. 631; Bank v. Wright, 48 N. Y. 1. (2) The defendant Atlas Construction Co. never having paid the draft, and never having obtained and surrendered the bill of lading but having obtained possession of the vault doors, plaintiff

was entitled to retake them. Bergeman v. Railroad, 104 Mo. 84; Fleck v. Warner, 25 Kan. 492; Page v. Crosby, 24 Pick. 215; Duke v. Shackleford, 56 Miss. 552; Everett v. Hall, 67 Maine 497·; Robinson v. Baker, 5 Cush. 137; Benj. on Sales (4 Am. Ed.), sec. 429 and cases cited. (3) The defendant Atlas Construction Co. was not an innocent purchaser. Chas. Groeb himself testified that he thought there was a sight draft somewhere which he would have to pay before he could get possession of the vault doors. Besides it is only when the vendor gives the vendee both the possession of the property and the indicia of ownership, that an innocent purchaser for value can hold the property against the original vendor. Leigh v. Railroad, 58 Ala. 176. (4) If the title has not passed from the original owner, an innocent purchaser, however much he may have been misled by the possession and apparent ownership of his vendor, would not be protected. Railroad v. Barnes, 5 L. R. A. (1st Series) 611; Millhiser v. Erdmann, 103 N. C. 27; Ballard v. Burgett, Langd. Cas. Sales 730, 40 N. Y. 314. (5) Where one consigns property to his own order, with directions to notify the purchaser thereof, and sends a draft with bill of lading attached, requiring payment thereof before the bill of lading shall be delivered, he does not thereby part with the title to the property. Refining Co. v. Refining Co., 42 L. R. A. 353; Hutchinson on Carriers, secs. 130, 131, 131a; Benj. on Sales (4 Am. Ed.), sec. 320, 381, 382; Dows v. Bank, 91 U. S. 618, 23 L. Ed. 214; Alderman v. Railroad, 115 Mass. 233; Hopkins v. Cowan, 42 L. R. A. 124. (6) The fact that the bill of lading contains a direction to notify a certain person of the arrival of the goods is no indication that he has any interest in them. Railroad v. Bank, 41 Ill. App. 287. (7) Nor is such direction any authority to the carrier to make delivery of such shipment to the person to be notified without the production of the bill of lading. Stockyards Co. v. West-

cott, 47 Neb. 300; Bank v. Bissell, 72 N. Y. 615; Wright v. Railroad, 8 Phila. 18; Libby v. Ingalls, 124 Mass. 503.

*L. Cunningham* for respondents.

(1) Replevin will not lie against a party not in possession of the goods sought to be, recovered. Myers v. Lingenfelter, 81 Mo. App. 251; Davis v. Randolph, 3 Mo. App. 454; Broadwater v. Darne, 10 Mo. 277; Feder v. Abrahams, 28 Mo. App. 454. (2) The court properly permitted the Atlas Construction Company to be made a party defendant upon its application, it having possession and claiming title to the goods at the time of the institution of this suit and the issuance of the summons, especially as the major defendants had disclaimed any interest in the goods. It is the purpose of the action of replevin to determine all the issues concerning the property in dispute. The person who actually detains the property must be made the defendant. Talbott v. McGee, 59 Mo. App. 347. (3) Plaintiff cannot recover in this cause because the Atlas Construction Company had made payment for the vault doors sought to be replevined and the title had passed to it before the commencement of this suit. Leete v. Bank, 141 Mo. 584; Westboy v. Milligan, 89 Mo. App. 294; Andrews v. Costican, 30 Mo. App. 29; Baker v. Campbell, 32 Mo. App. 529; Benedict & Burnham Mfg. Co. v. Jones, 60 Mo. App. 219. (4) The respondent Atlas Construction Company had paid plaintiff for the vault doors and was the owner and entitled to their possession. Payment to an agent is payment to his principal, and J. M. Critchfield was the agent for appellant. When an agent makes representations within the apparent scope of his authority they will be binding upon the principal though not within his express authority. Rand-McNally & Co. v. Wickham, 60 Mo. App. 48;

Lumber Co. v. Ballentine Foster & Co., 54 Mo. App. 180. (5) An agent's authority is presumed to be general rather than special, and may be implied from the principal's acts and acquiescence. Direct evidence to prove agency is not required, it may be implied from circumstances and conduct of the parties and the relations previously existing between them. Sharp v. Knox, 48 Mo. App. 169; Hull v. Jones, 69 Mo. 587; Mitchum, v. Dunlap, 98 Mo. 418; Werth v. Ollip, 61 Mo. App. 401. (6) Between third parties and the principal it is the apparent authority that controls, and a party has the right to rely upon the apparent authority of the agent. McLachlin v. Barker, 64 Mo. App. 511; McNichols v. Nelson, 45 Mo. App. 446. (7) The authority of the agent is co-extensive with and determined by the nature of the business, and such authority is not to be narrowed by restrictions and limitations not communicated to the party dealing with the agent. Gentry v. Insurance Co., 15 Mo. App. 215; Breckenridge v. Insurance Co., 87 Mo. 62.

BROADDUS, P. J.—This is an action by the plaintiff corporation against defendants, J. H. Baldwin, J. P. Wakefield and J. C. Franklin, judges of the county court of Polk county, and against defendant Dunnegan, county commissioner on the construction of a courthouse at Boliver, a county seat, and to recover the possession of two vault doors which were to be used in the construction of said courthouse. The Atlas Construction Company, a partnership consisting of Charles and Samuel Grob, on its application was made party defendant and filed its answer alleging that it was the owner and in the possession of the doors. The cause was tried before the court, which rendered judgment dismissing the action as to Baldwin, Wakefield, Franklin and Dunnegan, and found the issues in favor of the Atlas Construction Co.

On the 12th of April, 1906, the plaintiff entered into a contract with J. M. Critchfield of St. Louis, making him its special agent to sell its manufactured goods in the States of Kansas and Missouri.  By this contract, Critchfield agreed to pay plaintiff for all goods shipped direct from the factory, and goods shipped direct to the St. Louis Safe & Desk Company to be paid for by a sight draft made upon it through the Broadway Savings Trust Company of St. Louis. And it was provided that, "contracts for special work, such as vault linings, etc., will be taken in the name of the Diebold Safe & Lock Company and the original contract forwarded to it with the right on its part to make collection for the same, if in its judgment it thinks proper."

On May 7, 1906, an order for the doors in suit was made upon the plaintiff with direction to ship to R. G. Kirsh, Bolivar, Mo., "and lock instruction and invoice to us here.  Draw on us through the Broadway Savings Trust Company, this city.  (Signed) St. Louis Safe and Desk Company., J. M. Critchfield." The St. Louis Safe & Desk Company went into the hands of a receiver, after which by an agreement between plaintiff and Critchfield the former was to draw through the Missouri Lincoln Trust Company for any material shipped to him.

The doors in question were shipped to Bolivar on December 3, 1906, and were billed to the order of the plaintiff endorsed, "Notify R. G. Kirsh."  It appears that Kirsh who had charge of the work had been supplanted by defendant Dunnegan, who then had supervision of the work on the courthouse.  The bill of lading, with sight draft attached, was sent to the Missouri Lincoln Trust Company, upon which under the agreement with Critchfield plaintiff was to draw for payment for any material shipped to him.  When the doors arrived at Bolivar, the station agent of the railroad carrier there, knowing that Kirsh had been

discharged, notified defendant Dunnegan of the arrival. The railroad at the request of Dunnegan had the car containing the doors placed on a side track and Mr. Dunnegan or a man by the name of Hunt, who was acting in some capacity for the Atlas Construction Company, with Dunnegan had the doors unloaded in an old canning factory controlled by one, Viles. The station agent testified that Dunnegan told him that he would guarantee the payment of the sight draft. The doors remained in the place of deposit until replevined by plaintiff. The defendant partnership, the Atlas Construction Company, paid the money for the doors to Critchfield upon his representations that he was plaintiff's agent.

The court found that the defendants composing the county court and Dunnegan, the county commissioner, all of whom disclaimed ownership and possession, were not in the possession of the property at the time of the issuance and service of the writ and found that such possession was in the Atlas Construction Company; and, as that was a question of fact and there was an abundance of evidence to support the finding, we are precluded from going into that question. Therefore, the question is whether under the evidence the Atlas Construction Company was in such possession lawfully as against the plaintiff, which is a question of both law and fact and the determination of which depends upon whether Critchfield was the plaintiff's agent with authority to receive payment for the doors.

Under the contract, plaintiff constituted Critchfield its agent for the sale of its goods, and that he in fact made the sale to the Atlas Construction Company is admitted. The original contract for the doors was made in pursuance of the contract of agency through the St. Louis Safe & Desk Company, by which sight draft was to be drawn upon it through the Broad-

way Savings Trust Company.    After the latter had gone into the hands of the receiver, by mutual agreement of the parties Critchfield was substituted as the agent making the order.    This change did not modify or alter the relation of Critchfield to the plaintiff as its agent.

While the contract provides that Critchfield shall pay to plaintiff, the price of goods sold by him, its real purpose and effect was to make him liable to plaintiff for the proceeds of such sales.    The price of goods so sold by the agent, we infer from the contract, was charged to him by plaintiff in the usual course of business, or he would not be liable for them.    If, under a proper construction of the contract, he is to be held liable for the price of the goods sold by him, he was of necessity authorized to collect payment for them when delivered to the purchaser.    The power to collect was incidental to his agency in order to effectuate its main purpose, for how else could he make payments for the goods sold by him unless he had the authority to collect?    [Mechem on Agency, secs. 280-2.] And the fact that a sight draft accompanied the bill of lading does not affect the question, if we are right in our conclusion that the agent had the authority to collect.

But we think the following provision in the contract is decisive of the question, "Contracts for special work, such as vault linings, etc., will be taken in the name of the Diebold Safe & Lock Company and the original contract forwarded to it with the right on its part to make collections for the same, if in its judgment it thinks best to do so."    This shows that it was the intention of the parties that Critchfield should not only sell and collect the price for which goods were sold in all instances but even when such sales should be made in the name of the plaintiff, except where plaintiff thought best to make collections itself.

Waiving all other alleged errors, what we have said is conclusive of the issues raised on the appeal. Affirmed. All concur.